UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FREDERICK ARTERS,** *et al.***,**

    **Plaintiffs,**

v.

                                   **Civil Action 2:10-cv-00142**
                                   **Judge John D. Holschuh**
                                   **Magistrate Judge E.A. Preston Deavers**

**SANDOZ, INC.,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of the Motion to Transfer Action to the United States District Court for the Eastern District of Virginia (Doc. 8) of Defendants Sandoz, Inc. and Eon Labs, Inc.[1] For the reasons that follow, Defendants' Motion to Transfer (Doc. 8) is **DENIED**.

## I. BACKGROUND

A. <u>Factual Background</u>

Plaintiffs Frederick and Barbara Arters bring claims against Defendants for negligence, violation of the Ohio Products Liability Act, breach of implied warranties, fraud, and loss of consortium. (Compl. ¶¶ 149–91.) Plaintiffs' action arises from Plaintiff Frederick Arters' (hereinafter "Mr. Arters") purchase and ingestion of the drug amiodarone from November 2003 to February 2004. (Compl. ¶ 1.) Plaintiffs maintain that as a result of ingesting amiodarone,

---

[1] Defendants Sandoz, Inc. and Eon Labs, Inc., deny that the other Defendant listed in the Complaint, Sandoz GmbH, is a defendant in this action. (Answer ¶ 23.) For the purpose of this Order, the Court will refer to Defendants Sandoz, Inc. and Eon Labs, Inc. collectively as "Defendants," and individually as "Sandoz" and "Eon."

which they contend Defendant Eon manufactured and distributed, Mr. Arters suffered eye damage and vision loss, and was diagnosed as permanently blind in 2004.  (Compl. ¶¶ 1, 2, 5.)  Plaintiffs allegations include that Defendants failed to warn of the significant risks of amiodarone; failed to conduct adequate safety testing; and improperly promoted "off-label" use of amiodarone.  (*See, e.g.*, Compl. ¶¶ 11, 16–17, 150–55.)

Plaintiffs originally brought this action in the Delaware County (Ohio) Common Pleas Court.  Defendants removed it to this Court on February 17, 2010.  Defendant Sandoz is a New Jersey corporation with its principal place of business in New Jersey.  (Answer ¶ 21.)  Defendant Eon is a Delaware corporation with its principal place of business in New Jersey.[2]  (Answer ¶ 24.)  Although Plaintiffs' residence is the subject of dispute, Mr. Arters states, and Defendants do not contest, that Plaintiffs currently reside in Delaware, Ohio.  (Arters Aff. ¶ 2.)

B.  Defendants Contentions[3]

In their Motion to Transfer, Defendants contend that the Court should transfer this case, pursuant to 28 U.S.C. § 1404, to the Eastern District of Virginia.  Defendants cite several reasons in support of their Motion including the location of events relevant to Plaintiff's Complaint; the location of witnesses and documentary evidence; Mr. Arters' prior attempt to litigate this matter;

---

[2] Plaintiffs' Complaint contends that Defendant Eon maintains its principal place of business in New York.  (Compl. ¶ 24.)  The Court does not find this discrepancy to be relevant for the purposes of Defendants' Motion to Transfer.

[3] Defendants' support their contentions with the Declaration of Ray M. Aragon and attached exhibits.  (*See* Aragon Decl.; Exs., Doc. 9–1.)  Mr. Aragon was counsel for Defendants in *Westerlund v. Wyeth*, Civ. A. No. MID-L-2174-05 (Super. Ct. N.J., Middlesex), a suit against manufacturers and distributors of amiodarone that Mr. Arters attempted to join in 2008.  (Aragon Decl. ¶ 2; Exs., Doc. 9–1, at 12–18.)  The exhibits attached to Mr. Aragon's Declaration include prescription records of Mr. Arters from 2003 and 2004, an Amiodarone prescription label from 2004, a letter purportedly from Mr. Arters to Defendant Sandoz, and an Order of the Superior Court of New Jersey denying Mr. Arters' attempt to join the *Wyeth* case.  (Exs., Doc. 9–1.)

and Plaintiffs' long-time residence in Virginia.

Defendants maintain that the events relevant to Plaintiffs' Complaint occurred in the Eastern District of Virginia. Specifically, Defendants contend that Mr. Arters' diagnosis of atrial fibrillation, which led his doctor to prescribe amiodarone; his eye injury; and the treatment of that injury, all occurred in Virginia. (Defs.' Mot. To Transfer 4.) Defendants also indicate that Mr. Arters filled his prescription for amiodarone during November and December of 2003, as well as February of 2004, in Virginia. (*Id.* at 5–6; Exs., Doc. 9–1, at 2–5.) Accordingly, Defendants assert that important pharmaceutical and medical records are located in Virginia. (Defs.' Reply 5.)

With regard to potential witnesses, Defendants list six of Mr. Arters past treating physicians, Drs. Alan K. Banks, John Adelberg, Edward Gold, Michael Moro, John Brush, and David Woods, all of whom practice in Norfolk, Virginia.[4] Defendants contend that these witnesses, as treating physicians of Mr. Arters at the time of his prescription and injury, and their medical records, will be vital to issues concerning causation and Mr. Arters' knowledge of the potential risks of amiodarone. (Defs.' Mot. To Transfer 12–13.) Defendants specifically highlight that the testimony of Dr. Banks, Mr. Arters' treating cardiologist who prescribed the amiodarone, and Dr. Adelberg, Plaintiff's ophthalmologist at the time his vision problems occurred, as especially significant. (*Id.* at 6–7.) Defendants' Motion assumes that these witnesses will be unwilling to testify and maintains that because this Court lacks compulsory process over the witnesses Defendants "will be denied access to *all* of the nonparty witnesses and the key medical evidence upon which their defense depends." (*Id.* at 13.)

---

[4] Defendants performed internet searches to discover the locations of these physicians. (Defs.' Mot. To Transfer 6–7.)

Defendants also contend that Plaintiffs' choice of forum is not entitled to the normal deference the Court gives in considering whether to transfer venue.  In addition to the location of medical witnesses, Defendants maintain that because Plaintiffs were residence of Virginia up until 2009, their interest in Ohio is diminished.[5]  (Defs.' Mot. To Transfer 10–11.)  Furthermore, Defendants assert that because Mr. Arters attempted to intervene in an earlier action against Defendant Eon in New Jersey state court, Ohio was not his original forum choice.[6]  (*Id.* at 11 (citing *Reiser v. RTI Int'l Metals, Inc.*, No. 1:08-CV-00729, 2009 WL 1097250, at *2 (S.D. Ohio April 22, 2009).)

Finally, Defendants contend that public interest factors weigh in favor of transfer in this case.  Defendants assert that because the events leading to the cause of action occurred in Virginia, and involve long-time Virginia residence, Virginia has a stronger interest in this suit than Ohio.  (*Id.* at 14.)  Additionally, Defendants maintain that because the facts of the case took place in Virginia, Virginia law is likely to apply, and, therefore, a federal court in Virginia would be better suited to hear this case.  (*Id.*)

C. Plaintiffs' Contentions

Plaintiffs oppose transfer to the Eastern District of Virginia for several reasons.  Plaintiffs maintain that because they are currently residents of Ohio, their choice of forum is entitled to

---

[5] The October 2009 letter, attached as an exhibit to Mr. Aragon's Declaration, provides a Chesapeake, VA address for Mr. Arters.  (Exs., Doc. 9–1, at 9.)

[6] Defendants also assert that Plaintiff Barbara Arters choice of forum does not deserve deference because it is time barred under either Virginia or Ohio law. (Defs.' Mot. To Transfer 11 n.4.)

4

significant weight.[7] (Pls.' Mem. in Opp'n 3; Arters Decl. ¶ 2.) They also contend that since 2003 Plaintiffs have had continuous contacts with Ohio, as Mr. Arters has spent approximately half of each year in Ohio with his daughter. (Arters Decl. ¶ 3.)

Plaintiffs contest Defendants' assertions that their claims are unrelated to Ohio. For example, Plaintiffs maintain that Defendants have manufactured and distributed amiodarone in Ohio. (Pls.' Mem. in Opp'n 5.) Plaintiffs further state that they intend to call several Ohio witnesses on the issues of damages and liability. According to Plaintiffs, these witnesses would include "former employers, family members and physician who are and will be treating [Mr. Arters]." (Pls.' Mem. in Opp'n 4.) In addition to his daughter, Darlene Inscho, Plaintiffs name Mr. Arters' current treating physician, Dr. Bruce Fleishman, as a potential witness, who practices in Delaware, Ohio.[8] (*Id.*) Mr. Arters also states that he received treatment in October 2009 from Andrews House Clinic in Delaware, Ohio. (Arters Decl. ¶ 6e.)

Finally, Plaintiffs maintain that litigating the case in the Eastern District of Virginia would impose both physical and financial burdens on them. Specifically, Plaintiffs contend that because of Mr. Arters' blindness, he now relies on his wife and daughter to care for him, both of whom reside in Ohio. (Arters Decl. ¶ 6c.) Mr. Arters also indicates that he has not flown since

---

[7] As Defendants' Reply notes, Mr. Arters' Declaration does not state exactly when he and his wife moved to Ohio. (*See* Arters Decl. ¶ 2.) Because Plaintiffs do not challenge Defendants contention that Mr. Arters wrote an October 2009 letter listing a Virginia address, the Court will assume, for the purposes of its analysis, that Mr. Arters' permanent move to Ohio came shortly before filing this suit in January 2010.

[8] In their Reply, Defendants contend that Dr. Fleishman is a cardiologist, and although cardiology is relevant to the case history, the testimony of Mr. Arters' current cardiologist is irrelevant to his 2003 eye injury. (Defs.' Reply 4 n.3.)

5

2003 and that cannot travel without the aid of his wife, who is employed in Ohio.[9] (Arters Decl. ¶ 6b.) Plaintiffs further maintain that because Mr. Arters now relies solely on his wife's income, it would be a financial burden for him to litigate in Virginia, and Defendants are in a better financial position to bear the costs of litigating in Ohio. (Pls.' Mem. in Opp'n 5; Arters Decl. ¶ 6f.)

## II.  APPLICABLE LAW

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The threshold issue under § 1404(a) is whether the action could be brought in the transferee court. *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007). If a case could be brought in the court "the issue becomes whether transfer is justified under the balance of the language of § 1404(a)." *Id.* In balancing convenience, the Court must consider a number of factors such as "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (quoting *Moses v. Bus. Card Exp. Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)).

The moving party bears the burden to establish a need for transfer. *Kay*, 494 F. Supp. 2d at 849–50 (citing *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002)). Transfer pursuant to § 1404 must be "to a *more* convenient forum, not to a forum likely to prove

---

[9] Mr. Arters also states that Mrs. Arters would not be able to drive him to Virginia for pre-trial or trial proceedings. (Arters Decl. ¶ 6b.) Defendants object to this testimony as Mr. Arters testifying for Mrs. Arters. (Defs.' Reply 6.)

equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964) (emphasis added); *see also Shanehchian v. Macy's, Inc.*, 251 F.R.D. 287, 292 (S.D. Ohio 2008) ("[Section] 1404 does not allow . . . for transfer if that transfer would only shift the inconvenience from one party to another."). Furthermore, when balancing the 1404(a) factors, "the Court does not start with the assumption that the case should proceed in whichever forum is slightly more advantageous to the parties or the witnesses." *Levy*, 2010 WL 271300, at *9 (quoting *The Painting Co. v. Dist. Council No. 9, Int'l Union of Painters & Allied Trades*, 185 L.R.R.M. 2462, 2478 (S.D. Ohio 2008)).

"Ultimately . . . the decision whether to transfer venue under § 1404(a) is committed to the sound discretion of the trial court." *Levy v. Cain, Watters & Assocs., P.L.L.C.*, No. 2:09-cv-723, 2010 WL 271300, at *9 (S.D. Ohio Jan. 15, 2010); *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) ("As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate."). Section 1404(a) promotes "an individualized case by case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation omitted).

### III.  LEGAL ANALYSIS

Neither party disputes that this case could have been brought in the Eastern District of Virginia. Rather, the parties have set forth a variety of competing interests and concerns regarding the potential transfer of this case. As discussed below, although the Court finds that some factors weigh in favor of transfer, others do not. Ultimately, the Court concludes that Defendants have not satisfied their burden to show that the Eastern District of Virginia is the more convenient forum.

A.  <u>Plaintiffs' Choice of Forum</u>

Plaintiffs maintain that because they reside in Ohio, the Court should give their forum choice significant weight. Defendants, on the other hand, maintain that Plaintiffs' forum choice deserves little weight because Plaintiffs only recently moved to Ohio; Virginia is the place where the relevant events occurred; and Mr. Arters attempted to join an action against Defendants in New Jersey Superior Court.

Although it is not a dispositive factor, the Court must give Plaintiff's choice of forum weight. *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998); *see also Levy*, 2010 WL 271300 at *9 (internal quotation omitted) ("[I]t has long been held that the plaintiff's choice of a forum is entitled to considerable weight . . . ."). Accordingly, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)).

This Court has found that the interest of plaintiffs in their choice of forum is stronger when plaintiffs are residents of the forum they choose. *Max Rack, Inc. v. Hoist Fitness Sys., Inc.*, No. 2:05-CV-784, 2006 WL 640497, at *3 (S.D. Ohio March 10, 2006). Nevertheless, "[a] plaintiff's choice of forum . . . is entitled to somewhat less weight when the case is removed to federal court because the plaintiff is no longer in his or her chosen forum, which was state court." Additionally, the Court gives a plaintiff's choice of forum less weight when "none of the conduct complained of occurred in the forum selected by the plaintiff." *Am. Signature Inc. v. Moody's Investors Servs., Inc.*, No. 2:09-cv-878, 2010 WL 2667367, at *2 (S.D. Ohio July 2, 2010) (internal quotations omitted); *but see Pearle Vision, Inc. V. N.J. Eyes, Inc.*, No. 1:08-CV-190, 2009 WL 73727, at *9 (S.D. Ohio Jan. 6, 2009) ("Even if a more substantial part of the

events . . . might have occurred in the [Defendants' preferred district], this is not a dispositive factor here when examined in the totality of circumstances.").

In this case, the Court finds it most appropriate to give Plaintiffs' choice of forum some weight. Plaintiffs' case was removed from their original choice of state court, but at the same time they are residents of Ohio. While it is true, as Defendants contend, that the evidence suggests that Plaintiffs moved to Ohio only recently, Mr. Arters' Declaration also provides that he has spent approximately half of every year in Ohio since 2003. Furthermore, while many of the operative facts involving Mr. Arters' prescription, purchase, and ingestion of amiodarone appear to have occurred in Virginia, Defendants seem to ignore that Plaintiffs' Complaint implicates Defendants' broader policies and procedures regarding their national distribution of amiodarone, which Plaintiffs contend occurred, in part, in Ohio.[10] (*See* Compl. ¶¶ 29–30.) Again, Mr. Arters indicates that he was spending approximately half of each year in Ohio during the relevant 2003 to 2004 period. (Arters' Decl. ¶ 3.)

Defendants also contend that because Mr. Arters attempted to join a 2008 claim in New Jersey Superior Court, that his current choice of an Ohio forum is entitled to little weight. Defendants cite *Reiser v. RTI Int'l Metals, Inc.*, No. 1:08-CV-00729, 2009 WL 1097250, at *2 (S.D. Ohio April 22, 2009) to support this contention. In *Reiser*, after an adverse ruling in the Northern District of Ohio, a plaintiff attempted to bring an identical complaint in the Southern District. 2009 WL 1097250, at *2. The *Reiser* Court transferred the case to the Northern District of Ohio for multiple reasons including that the Northern District was the plaintiff's original forum choice and his attempt to bring the case in the Southern District was

---

[10] Defendants themselves state in their Answer that they sold and/or distributed amiodarone "into the stream of commerce." (Answer ¶ 29.)

impermissible forum shopping. *Id.* The Court finds this case distinguishable. Here, Plaintiff has never attempted to bring an action in the Eastern District of Virginia, the proposed transferee district. Rather, he attempted to join other plaintiffs' action, already in progress, against Defendants in New Jersey state court. When Mr. Arters was unable to join the other plaintiffs' action, he chose to bring his own cause of action in his state of residence. The Court finds that there are a variety of reasons, outside of forum choice, that Mr. Arters might have desired to join the prior action. These circumstances, therefore, do not constitute improper forum shopping, as was present in *Reiser*. The Court finds little reason to reduce the weight of Plaintiffs' forum choice on this grounds.

Accordingly, the Court concludes that the facts in combination justify giving some, although not substantial, weight to Plaintiffs' forum choice.

B. <u>Location of Witnesses and Evidence</u>

As detailed above, Defendants name six of Mr. Arters' treating physicians during the relevant time period, all of whom practice in Virginia. According to Defendants, these non-party witnesses will be crucial to various issues including causation. The witnesses include, Dr. Banks who prescribed amiodarone to Mr. Arters, and Dr. Adelberg who appears to have been Mr. Arters treating ophthalmologist at the time his vision loss began. Defendants contend that because the Court lacks compulsory process over these witnesses, Defendants will be denied access to the witnesses if the Court does not transfer the case. Defendants also maintain that important pharmacy and medical records are located in Virginia. Plaintiffs do not contest the location or relevance of Defendants named witnesses, but they do assert that several Ohio witnesses, including Mr. Arters' former employers, family members, and physicians will testify concerning liability and damages. (*See* Arters' Decl. ¶6g.) Plaintiffs specifically name Dr.

Flieshman, Mr. Arters' current treating cardiologist, and Mr. Arters' daughter as potential witnesses.

The private factors that the Court may consider in the context of § 1404(a) include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Am. Signature Inc.*, 2010 WL 2667367, at *2 (internal quotation omitted); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). As this Court has noted, in considering a motion to transfer under 28 U.S.C. 1404(a), "[t]he convenience of witnesses is considered to be of the utmost importance." *Kay*, 494 F. Supp. 2d at 852 (citing 15 C.A. Wright, A.R. Miller & E.H. Cooper, Federal Practice and Procedure, § 3851).

In the instant case, the Court finds that while the location of witnesses and records does favor transfer, Defendants overstate the effect denying transfer would have on their case. Defendants have clearly identified non-party witnesses, as well as their records, that would not be subject to this Court's compulsory process, and would likely be important to their case. Although they have not provided definitive evidence on the issue, Defendants proceed under the assumption that these witnesses would be unwilling to attend trial in Ohio. *See Pearle Vision*, 2009 WL 73727, at *8 (noting, in conducting a § 1404(a) analysis that the defendants "have [not] offered any evidence that their witnesses would be unable or unwilling to provide testimony at a trial in this District"); *see also Armco, Inc. v. Reliance Nat. Ins. Co.*, No. C-1-96-1149, 1997 WL 311474, at *5 (S.D. Ohio May 30, 1997) ("[T]he Defendant has not indicated that witnesses would be unwilling to attend and offer testimony. . . . [T]he Defendant must submit evidence indicating that their witnesses have refused to attend trial in the Southern

11

District.").

Nevertheless, even assuming Defendants assumption is correct and the witnesses are unwilling to testify in Ohio, Defendants would not "be denied access to *all* of the nonparty witnesses and the key medical evidence upon which their defense depends," as they contend. Rather, they could use the compulsory process of the Eastern District of Virginia to obtain deposition testimony which they could use at trial in Ohio.[11] *See Projects Unlimited, Inc. v. All Tech Elecs., Inc.*, No. 3:09-cv-284, 2010 WL 299156, at *8 (S.D. Ohio Jan. 21, 2010) ("While [the defendant] asserts, compulsory process is available to obtain witness testimony in New York, the same compulsory process can be used to obtain deposition testimony from those witnesses in New York which can be used at trial in Ohio."). Finally, although the Ohio witnesses Plaintiffs name are less in number, and may, as Defendants maintain, be ultimately less important to the case, the Court does not find that their convenience should be ignored.

Once again, the Court does find that the location of the witnesses and evidence favors transfer. Nevertheless, considering this factor in the context of all the factors involved in this case, the Court does not find that it ultimately pushes the balance strongly in favor of transfer.

C. Burden on the Parties

Plaintiffs contend that because of Mr. Arters' blindness he has not flown since 2003; he requires the assistance of his wife and daughter to travel; and he relies on Mrs. Arters' income for support. (*See* Arters' Decl. ¶ 6.) Plaintiffs, therefore, maintain that transfer to Virginia would impose an extreme physical and financial burden on them. In their Reply, Defendants suggest that Mr. Arters would only have to be present for trial in Virginia. (Defs.' Reply 6–7.)

---

[11] Plaintiffs also suggest the potential option of video conference testimony.

12

Defendants further assert that because Mr. Arters lived in both Ohio and Virginia from 2003 to 2009 it would not be a burden for him to make the trip.[12] (*Id.*)

In addition to the convenience of witnesses, in conducting a § 1404(a) analysis, the Court should consider "the private interests of the parties." *Moore*, 446 F.3d at 647 n.1.  Accordingly, the Court may take into account "which party is more easily able to bear the hardship involved in litigating in a distant forum . . . ." *Nat'l Benefit Programs, Inc. v. Express Scripts, Inc.*, No. 2:09-cv-1156, 2010 WL 1963431, at *3 (S.D. Ohio May 17, 2010) (internal citation omitted).

The Court finds that, because of Mr. Arters' physical condition, it is clear that it would be a great burden for him to litigate in Virginia.  Although Mr. Arters is likely physically capable of making the trip to Virginia, the Court sees no reason to doubt his contention that making such a trip would be difficult for him and his family because of his blindness.  Furthermore, despite Defendants contentions that Mr. Arters would only need to travel to Virginia for trial, Mr. Arters has a clear interest, as the central Plaintiff in this case, in being present for both pretrial and trial proceedings.  Finally, although certain witnesses are located in Virginia, Defendants themselves maintain their principal places of business in New Jersey.  Therefore, their employees will likely have to travel regardless of whether the case proceeds in Ohio or Virginia.  Accordingly, the Court finds that this factor weighs strongly against transfer.

D.  <u>Public Interest Factors</u>

Defendants remaining contentions revolve around public interest factors.  Specifically,

---

[12] Defendants also imply that because Mr. Arters attempted to join a New Jersey suit, it would not be too much of a burden for him to litigate in Virginia.  Nevertheless, as noted above, the Court finds that there are multiple reasons, outside of the convenience of the forum, that Mr. Arters may have wished to join an already pending New Jersey state action rather than commencing his own litigation.

Defendants assert that because the events involved in this dispute occurred in Virginia, Ohio does not have an interest in this litigation and Virginia does.  Additionally, Defendants maintain that because relevant facts took place in Virginia, Virginia law is likely to apply, and therefore, a federal court in Virginia will be in a better position to hear this case.  Plaintiffs, on the other hand, contend that Defendants have manufactured and distributed amiodarone in Ohio, creating a connection between Ohio and this lawsuit.

In addition to private factors, § 1404(a) requires the Court to consider "public-interest concerns, such as systemic integrity and fairness."  *Moore*, 446 F.3d at 647 n.1.  Specifically, "[p]ublic interest factors include the issues of congested dockets, concerns with resolving controversies locally, and, in diversity cases, having the trial in a forum that is at home with the state law that must govern the case."  *Wm. R. Hague, Inc. v. Sandburg*, 468 F. Supp. 2d 952, 963 (S.D. Ohio 2006) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

When comparing the public interests to the rest of the factors involved in this case, the Court does not find that the public interest factors garner much weight.  Virginia certainly has an interest in this litigation as it involves pharmaceuticals distributed within the state.  Nevertheless, Defendants undervalue Ohio's interest in this dispute.  In particular, Plaintiffs are current residence of Ohio and Mr. Arters has apparently been living in Ohio part time since 2003, when he began to lose his vision.  Furthermore, Plaintiffs' Complaint alleges improper conduct regarding Defendants' sale and distribution of amiodarone into the national stream of commerce.  The Court finds that Ohio has a significant interest in this activity.  Finally, even assuming that

14

Virginia state law will apply in this case,[13] the parties have provided no indication that the applicable law is "'so unique' that this Court would not be as capable as another federal district court that happens to sit in [Virginia] of applying that law." *See ITS Fin., LLC v. Advent Fin. Servs., LLC*, No. 3:10CV0041, 2010 WL 3603907, at *4 (S.D. Ohio Aug 23, 2010) (Report and Recommendation, adopted September 13, 2010) (citing *Midwest Motor Supply v. Kimball*, 761 F.Supp. 1316, 1319 (S.D.Ohio 1991)).

In sum, the Court finds that in considering the individual circumstances of this case, Defendants have failed to meet their burden of showing the need for transfer. Certain factors, such as the location of non-party witnesses, favor transfer. Nevertheless, other factors, such as Plaintiffs' forum choice and the burden travel would place on Plaintiffs, do not. While the Eastern District of Virginia would be more convenient for Defendants, it would be a more inconvenient forum for Plaintiffs. After balancing both the private and public interests involved, the Court finds that the evidence does not demonstrate that the Eastern District of Virginia is the more convenient forum.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer Action to the United States District Court for the Eastern District of Virginia (Doc. 8) of Defendants Sandoz, Inc. and Eon Labs, Inc. Is **DENIED**.

---

[13] The Court does not find it necessary to reach the merits of this issue at this time.

## VI.  NOTICE

Under the provisions of 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and Eastern Division Order No. 91-3, pt. F, 5, either party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge. The motion must specifically designate the Order, or part thereof, in question and the basis for any objection thereto.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

**IT IS SO ORDERED.**

<u>September 27, 2010</u>                               <u>    /s/ *Elizabeth A. Preston Deavers*    </u>
                                                                Elizabeth A. Preston Deavers
                                                                United States Magistrate Judge